BRIAN J. McSWEENEY, Esq. (SBN 127758)
SEAN M. JACOBSON, Esq. (SBN 227241)
**ANDERLINI & McSWEENEY LLP**
66 Bovet Road Suite 285
San Mateo, California 94402-3520
Telephone (650) 212-0001
Facsimile (650) 212-0081
*bmcsweeney@amlawoffice.com*

Attorneys for Plaintiffs
Robert C. Tiffany, Kathryn P. Tiffany,
William G. Tiffany, and Susan Tiffany-Brown

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. TIFFANY, KATHRYN P. TIFFANY, WILLIAM G. TIFFANY, and SUSAN TIFFANY-BROWN<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES BASED UPON:**<br><br>1. **Violation of California Vehicle Code § 11713.3**<br>2. **Intentional Interference With Prospective Economic Relations**<br>3. **Negligent Interference With Prospective Economic Relations**<br>4. **Violation of California Business and Professions Code § 17200,** *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1. At all times pertinent to this Complaint, Plaintiffs were the owners of a Ford franchise in Hollister California, with Plaintiffs being the shareholders of a corporation named Tiffany Motor Company, more commonly known as Tiffany Ford ("Tiffany Ford"). In fact, at the pertinent times Tiffany Ford was the oldest Ford dealership in the State of California, having been in existence for more than 100 years.

2. The subject matter of this Complaint arises from Ford Motor Company's ("Ford") misconduct and obstruction of Plaintiffs' efforts to sell and transfer their interests in the dealership to a third-party purchaser. As is set forth in more detail herein, Plaintiffs arranged for the sale of Tiffany Ford to an immensely qualified purchaser who is well known and respected in the auto industry. However, despite the supreme qualifications of the purchaser, and Tiffany Ford's long standing tenure as one of the oldest Ford franchises in the Country, Ford impeded and interfered with the sale of Plaintiffs' interests in the dealership by imposing unnecessary and unreasonable restrictions on approval of the purchaser.

3. The conditions which Ford demanded and imposed were entirely unrelated to approval of the purchasers as appropriate transferees, but instead related to Ford's desire that the purchaser perform unwarranted improvements to the dealership facility which is owned by Plaintiffs. As a result of Ford's misconduct and unreasonable withholding of consent to the proposed transferee, the purchaser refused to proceed with the transaction as negotiated among the parties, thereby preventing Plaintiffs from transferring their interests and realizing the value offered by the purchaser. Ultimately, the purchaser would not and did proceed with the sale unless and until Plaintiffs reduced the purchase price by an enormous amount, with the buyer indicating that the reduction of $500,000 was required in order to offset the cost of Ford's demanded improvements. Thus, Plaintiffs were damaged by Ford's conduct in the amount of $500,000, i.e., the reduced purchase price.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(c), diversity of citizenship, as the Plaintiffs, on one hand, and Defendant, on the other hand, are citizens of different states.

5. The amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.

6. Venue is proper in the Northern District of California because the acts, failures to act, omissions, and events giving rise to the claims for relief alleged herein occurred, in whole or at least substantial part, in San Benito County which is in the Northern District of California.

COMPLAINT                                                                                           CASE NO. _____

### INTRADISTRICT ASSIGNMENT

7. A substantial part of the events and omissions that give rise to the claims alleged herein occurred in San Benito County, and therefore assignment to the San Jose Division is appropriate pursuant to Local Rules 3-2(c) and 3-2(e).

### PARTIES

8. Robert C. Tiffany, Kathryn P. Tiffany, William G. Tiffany, and Susan Tiffany-Brown (together, "Plaintiffs") are individuals, each of whom resides in the State of California. At all pertinent times Plaintiffs were the shareholders of Tiffany Ford.

9. Plaintiffs are informed and believe that Ford is a Delaware corporation with its principal place of business in the State of Michigan, and that Ford is therefore a resident of Michigan for purposes of determining diversity jurisdiction. Ford is doing business in the State of California, including within this judicial district.

### STATEMENT OF FACTS

#### Background Regarding Dealership

10. At all pertinent times Tiffany Ford was an authorized Ford dealership and service facility located in Hollister, California. While Tiffany Ford operated in a small market, it has a rich history and reputation dating back to 1910.

11. In fact, at the times pertinent to this Complaint, Tiffany Ford was the oldest Ford dealership in California, the fifth oldest Ford dealership in the United States, and one of the very few dealerships in Ford's long history to have sustained operations for a period of at least one-hundred (100) years.

12. During this lengthy tenure as a loyal Ford dealership, Tiffany Ford was operated by four generations of the Tiffany family. Upon assuming control, the current generation, being the Plaintiffs herein, constructed the new and current dealership facility located at the north end of downtown Hollister. The current facility is fairly new construction, is in terrific condition, and was updated just five (5) years prior to the events described herein, with the updates including a major upgrade of the service write-up and waiting area. The entire construction update was performed

COMPLAINT                                                                   CASE NO. _____

with Ford's oversight and approval, and was compliant with Ford's facility requirements at the time of the renovations.

### Plaintiffs' Attempt to Sell Their Interests in the Dealership

13. After a century of loyal service to Ford and its customer base, the Tiffany family elected to sell their interests in the dealership. Plaintiffs received and accepted an offer for purchase from a purchaser group comprised of two brothers who are reputable, successful, and local businessmen that have owned and operated other major auto dealerships in both San Benito and Santa Clara Counties ("Buyer").

14. Plaintiffs and Buyer engaged in negotiations which resulted in an agreement on terms, and thereafter those parties prepared extensive documentation of their agreement, with both parties incurring substantial attorneys fees and other transactional costs. The final Purchase Agreement, with exhibits, is comprised of more than seventy (70) pages of documentation.

15. The Purchase Agreement was structured as a stock sale, with the Buyer obtaining the shares of Tiffany Ford and Plaintiffs therefore selling and transferring their interests in the dealership by selling their shares to Buyer.

16. The purchase price for the transfer of Plaintiffs' interests in the dealership was substantial, and the transaction included other components, including leases for the real properties on which the dealership operates (which are owned by Plaintiffs or their affiliate).

### Ford's Obstruction of the Sale

17. Upon execution of the Purchase Agreement, Plaintiffs and the Buyer forwarded the executed Purchase Agreement to Ford and requested approval of the Buyer as the transferee of Plaintiff's interests in the dealership. Ford acknowledged receipt of the request for approval on March 19, 2019.

18. The Buyer is supremely qualified, unquestionably financially viable, and at no time did Ford question the viability of the Buyer as a viable transferee dealer candidate.

19. Buyer provided all documents and information necessary for Ford to evaluate the *bona fides* of the Buyer transferee, including applications, performance data, operating plans, and supporting financial documents

20. While not required to do so, but in order to proceed with its acquisition of Plaintiffs' interests in the dealership, the Buyer agreed to perform certain improvements to the dealership facility, including: exterior painting, updated exterior signage, interior improvements, interior painting, new furniture, updated flooring and new bathrooms. In fact, prior to execution of the Purchase Agreement Plaintiffs, Buyer, and Ford were involved in extensive discussions with Ford to ascertain the scope of any upgrades that Ford may request, with those discussions transpiring because the Buyer required assurances (a) that the purchase offer comported with Buyer's expectations as to anticipated prospective costs, and (b) that Ford would not expand its upgrade demands after Buyer finalized its offer.

21. During the foregoing discussions, Ford indicated to both Plaintiffs and Buyer, through Ford's local representatives, that Buyer's proposed scope of upgrades was acceptable; that a larger scope of improvements was unwarranted under the circumstances; that final corporate approval should not be problematic; and that facility upgrade requirements would not be an impediment to closing the transaction.

22. Despite the foregoing, and contrary to its prior assurances that Buyer's proposed upgrades were acceptable, on July 12, 2019, Ford advised Buyer that Buyer would not be approved as a transferee unless it agreed to complete a full image "Signature" design update, including substantial exterior façade redevelopment – the cost of which is several times the previously agreed upon improvements and none of which were required under the existing Dealership Agreement.

23. In addition to being an unreasonable and unlawful condition on approval of the Buyer as transferee, the full image "Signature" design update is unnecessary in light of the dealership's excellent condition, recently updated facility, and smaller market.

24. In refusing to approve Buyer as a transferee, Ford did not express any objection to the Buyer itself – instead, Ford indicated that approval would be granted only upon Buyer capitulating to performance of Ford's "Signature" design update.

25. Both Plaintiffs and Buyer expressed to Ford that the conditions being imposed were unacceptable, unreasonable, and placed the transaction in jeopardy. Nonetheless, Ford insisted on the "Signature" update as a condition to approval of Buyer as a transferee.

- 5 -

COMPLAINT CASE NO. _____

26. As a result of Ford's conduct, Buyer elected to terminate the Purchase Agreement and the sale aborted. Buyer's written notice of termination dated July 22, 2019, specifically states as follows:

> "It appears we are at a deadlock. As you are aware <u>Ford has recently imposed Signature 3000 image requirements on Purchasers which they find completely unreasonable under the circumstances - the package was submitted to Ford (with local Ford blessing) with interior improvements only, but apparently that is not acceptable to the higher management levels at Ford</u>. This email will herewith notify Sellers, through you, that the [Purchasers] are cancelling the transaction for failure of this condition. Should you demand another form of notice, please inform me immediately or else I will consider this email notification sufficient." (Emphasis supplied)

27. Following termination by Buyer, Plaintiffs, through their counsel, wrote to Ford on July 29, 2019, to notify Ford the Buyer's termination, and to demand that Ford both withdraw its unreasonable conditions and immediately approve Buyer. Nonetheless, and knowing that it had already caused termination of the Purchase Agreement, Ford continued to refuse to withdraw its condition of approval as stated above.

28. Thereafter, Plaintiff engaged in further discussions with Buyer, and Buyer indicated that it would not proceed with the purchase unless and until Plaintiffs substantially reduced the purchase price in order to account for the enormous cost of the improvements that Ford was demanding as a condition of approval. In order to mitigate their damages, Plaintiffs acquiesced to the significantly decreased purchase price and the sale closed in or about August, 2019.

29. Upon Buyer capitulating to perform the "Signature" update, Ford immediately approved Buyer as an authorized transferee.

30. As a result of Ford's conduct, including Ford's unreasonable refusal to consent to Buyer as transferee, Plaintiffs were prevented from transferring their interests to Buyer and realizing the benefit of their interests on the original sale terms, thereby causing damage in the amount $500,000, being the amount of the reduced purchase price.

# FIRST CLAIM FOR RELIEF
**Plaintiffs Against Ford**
**Violation of California Vehicle Code § 11713.3**

31. Plaintiffs reallege Paragraphs 1 through 31 above and incorporate those paragraphs herein by this reference.

32. Plaintiffs, as stockholders of the dealership, entered into an agreement with Buyer for the transfer of Plaintiffs' interests in the dealership on the terms agreed by Plaintiffs and Buyer.

33. Plaintiffs and Buyer requested that Ford consent to the transfer of Plaintiffs' interests to Buyer; presented all required documents and information necessary for Ford to consider Buyer as transferee; and performed all other acts required to seek Ford's approval, with the exception of any acts which were excused.

34. Ford unreasonably withheld consent of Buyer as transferee of the dealership, including by refusing to consent to the transfer unless Buyer agreed to perform a "Signature" design update of the dealership, which upgrade is unnecessary, unsupported by any legal authority, and, regardless, is unrelated to Buyer's qualifications as transferee.

35. Buyer is eminently qualified as a transferee of the dealership and Ford never questioned or otherwise indicated any disapproval of the *bona fides* of Buyer as a proper transferee. Moreover, upon Buyer ultimately agreeing to perform the "Signature" upgrade, Ford immediately approved Buyer as an authorized transferee thereby acknowledging Buyer's qualifications.

36. Ford's conduct constitutes a violation of California Vehicle Code §§ 11713.3(d) and (e) because Buyer was always a qualified transferee, Ford unreasonably withheld consent of the transfer, and Ford placed unreasonable and unwarranted conditions on the transfer of the dealership, thereby preventing, or attempting to prevent, Plaintiffs from transferring their interest in the dealership and/or from receiving fair and reasonable compensation for the franchised business.

37. Plaintiffs were harmed by Ford's violation of California Vehicle Code §§ 11713.3(d) and (e) because the Buyer terminated the Purchase Agreement due to Ford's unreasonable demands, and refused to revive the purchase and proceed with the acquisition of Plaintiffs' interests in the dealership unless Plaintiffs substantially reduced the purchase price – which Plaintiffs agreed to do

COMPLAINT                                                                                      CASE NO. _____

in order to mitigate their damages. Therefore, Plaintiffs have been harmed in the amount of the reduced purchase price, i.e., the sum of $500,000.

38. Plaintiffs are informed and believe, and on that basis allege, that in engaging in the acts and omissions alleged herein, Ford acted with malice, oppression, and fraud as contemplated by California Civil Code section 3294.

WHEREFORE, Plaintiffs pray for entry of judgment as requested herein.

## SECOND CLAIM FOR RELIEF
**Plaintiffs Against Ford**
**Intentional Interference With Prospective Economic Relations**

39. Plaintiffs reallege Paragraphs 1 through 39 above and incorporate those paragraphs herein by this reference.

40. Plaintiffs had an economic relationship with Buyer pursuant to which Buyer agreed to purchase Plaintiffs' interests in the dealership on the terms set forth in the original Purchase Agreement.

41. The relationship would have resulted in an economic benefit to Plaintiffs.

42. Ford knew of the relationship between Plaintiffs and Buyer.

43. Ford engaged in wrongful conduct by unreasonably withholding consent of Buyer as transferee and by insisting on Buyer performing a "Signature" design upgrade as a condition of approving Buyer as a transferee.

44. By engaging in this conduct, Ford intended to disrupt the relationship between Plaintiffs and Buyer, or knew that disruption of the relationship was certain or substantially certain to occur.

45. The relationship between Plaintiffs and Buyer was disrupted due to Ford's conduct, with Buyer terminating the agreement to purchase as a direct result of Ford's conduct.

46. Plaintiffs were harmed by Ford's conduct because the Buyer refused to revive the purchase and proceed with the acquisition of Plaintiffs' interests in the dealership unless Plaintiffs substantially reduced the purchase price – which Plaintiffs agreed to do in order to mitigate their damages. Therefore, Plaintiffs have been harmed in the amount of the reduced purchase price, which amount exceeds the sum of $75,000.

COMPLAINT                                                                 CASE NO. _____

47. Ford's conduct was a substantial factor in causing Plaintiffs' harm.

48. Plaintiffs are informed and believe, and on that basis allege, that in engaging in the acts and omissions alleged herein, Ford acted with malice, oppression, and fraud as contemplated by California Civil Code section 3294.

WHEREFORE, Plaintiffs pray for entry of judgment as requested herein.

### THIRD CLAIM FOR RELIEF
**Plaintiffs Against Ford**
**Negligent Interference With Prospective Economic Relations**

49. Plaintiffs reallege Paragraphs 1 through 39 above and incorporate those paragraphs herein by this reference.

50. Plaintiffs had an economic relationship with Buyer pursuant to which Buyer agreed to purchase Plaintiffs' interests in the dealership on the terms set forth in the original Purchase Agreement.

51. The relationship would have resulted in an economic benefit to Plaintiffs.

52. Ford knew of the relationship between Plaintiffs and Buyer.

53. Ford knew or should have known that the relationship would be disrupted if it failed to act with reasonable care.

54. Ford failed to act with reasonable care.

55. Ford engaged in wrongful conduct by unreasonably withholding consent of Buyer as transferee and by insisting on Buyer performing a "Signature" design upgrade as a condition of approving Buyer as a transferee.

56. The relationship between Plaintiffs and Buyer was disrupted due to Ford's conduct, with Buyer terminating the agreement to purchase due expressly to Ford's conduct.

57. Plaintiffs were harmed by Ford's conduct because the Buyer refused to revive the purchase and proceed with the acquisition of Plaintiffs' interests in the dealership unless Plaintiffs substantially reduced the purchase price – which Plaintiffs agreed to do in order to mitigate their damages. Therefore, Plaintiffs have been harmed in the amount of the reduced purchase price, i.e., the sum of $500,000.

COMPLAINT                                                                                                           CASE NO. _____

58. Ford's conduct was a substantial factor in causing Plaintiffs' harm.

59. Plaintiffs are informed and believe, and on that basis allege, that in engaging in the acts and omissions alleged herein, Ford acted with malice, oppression, and fraud as contemplated by California Civil Code section 3294.

WHEREFORE, Plaintiffs pray for entry of judgment as requested herein.

### FOURTH CLAIM FOR RELIEF
**Plaintiffs Against Ford**
**Violation of California Business and Professions Code § 17200, *et seq.***

60. Plaintiffs reallege Paragraphs 1 through 60 above and incorporate those paragraphs herein by this reference.

61. In committing the acts complained of herein, Ford engaged in unfair business practices as contemplated by California Business and Professions Code § 17200, *et seq.* ("Unfair Competition Law" or "UCL")

62. Pursuant to the UCL, unfair business practices include "unlawful, unfair, or fraudulent" acts or practices.

63. Ford's conduct constituted an unlawful business practice because it violated California Vehicle Code § 11713.3, and the violation of any law renders a practice unlawful for purposes of the UCL.

64. Ford's conduct constituted an unfair business practice because it offends public policy, and was immoral, unethical, oppressive, unscrupulous, and substantially damaging to Plaintiffs.

65. Ford's practices as alleged herein resulted in violations of the UCL, caused actual harm to Plaintiffs, and will continue to cause harm in the future if allowed to persist – particularly because Plaintiffs demanded that Ford cease its conduct but Ford refused. As such, the unlawful and unfair business practices are ongoing and present a continuing threat.

66. Plaintiffs therefore seek injunctive relief ordering Ford to cease its unlawful and unfair business practices.

WHEREFORE, Plaintiffs pray for entry of judgment as requested herein.

### PRAYER

- 10 -

COMPLAINT     CASE NO. _____

WHEREFORE, Plaintiffs pray for entry of judgment as follows:

a. For monetary damages according to proof in excess of $75,000;

b. For exemplary damages,

c. For interest on all damages,

d. For costs of suit,

e. For attorneys fees as may be available,

f. For injunctive relief enjoining Ford's unlawful and unfair business practices, and

g. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial on all issues so triable.

Date: 12-4-20

ANDERLINI & McSWEENEY LLP

By: _____
Brian J. McSweeney, Esq.
Attorneys for Plaintiffs

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Robert C. Tiffany, Kathryn P. Tiffany, William G. Tiffany, and Susan Tiffany-Brown

**(b) County of Residence of First Listed Plaintiff** San Benito County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c) Attorneys** *(Firm Name, Address, and Telephone Number)*
Anderlini & McSweeney LLP, 66 Bovet Road, Suite 285, San Mateo, California 94402; (650) 212-0001

## DEFENDANTS
Ford Motor Company

**County of Residence of First Listed Defendant** Wayne County, Michigan
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**Attorneys** *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1. U.S. Government Plaintiff
2. U.S. Government Defendant
3. Federal Question *(U.S. Government Not a Party)*
4. [X] Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent–Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | [X] 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | 540 Mandamus & Other | | | |
| 290 All Other Real Property | 448 Education | 550 Civil Rights | | | 950 Constitutionality of State Statutes |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee-- Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
2 Removed from State Court
3 Remanded from Appellate Court
4 Reinstated or Reopened
5 Transferred from Another District *(specify)*
6 Multidistrict Litigation–Transfer
8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
Violations of Cal. Vehicle Code Sections 11713.3(d) and (e); Negligent and Intentional Interference With Economic Relations; Cal. B&P Section 17200

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.
DEMAND $ 500,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE
DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*
SAN FRANCISCO/OAKLAND    [X] SAN JOSE    EUREKA-MCKINLEYVILLE

DATE 12/4/20

SIGNATURE OF ATTORNEY OF RECORD