UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. TIFFANY, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>        Defendant. | Case No. 20-cv-08604-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 39 |

Defendant Ford Motor Company's motion for summary judgment, Dkt. No. 39, is suitable for decision without oral argument. Civil L.R. 7-1(b). The parties' familiarity with the record is assumed, and the motion is denied. The hearing set for January 27, 2022, is vacated.

Plaintiffs were shareholders of Tiffany Ford, a Ford dealership in Hollister, California. Dkt. No. 1 ¶¶ 1, 8, 12. They sold their shares in the dealership, and allege that Ford engaged in "misconduct and obstruction of Plaintiffs' efforts to sell and transfer their interests in the dealership." *Id*. ¶¶ 2, 8. Plaintiffs say that the transaction they negotiated with the purchasers (the Greenwoods) failed because of Ford's demands for unwarranted improvements to the dealership facility, and that plaintiffs were able to sell the dealership to the Greenwoods only after reducing the purchase price by $500,000 to account for Ford's demands. *Id*. ¶ 3. Plaintiffs allege claims against Ford under the California Vehicle Code § 11713.3 (which prohibits, *inter alia*, a manufacturer's unreasonable withholding of consent for a dealer's proposed sale of a franchise), and for intentional interference with prospective economic relations, negligent interference with prospective economic relations, and a violation of California Business and Professions Code § 17200. *Id*. ¶¶ 31-66.

Summary judgment is denied because the record demonstrates that there are genuine disputes of fact about Ford's handling of the proposed transaction with the Greenwoods, and whether Ford unreasonably tied its approval of the transaction to the Greenwoods' agreement to "upgrade the dealership facility to meet Ford's image standard." Dkt. No. 41 at 2. The evidence includes, for example, plaintiff Robert Tiffany's statements in a declaration that he was shown pictures of the "Signature" design upgrade which Ford was demanding that the Greenwoods make, and as to which Tiffany "objected [that] the imposition of any facility upgrade [was] unreasonable," specifically "any Signature upgrade." Dkt. No. 40-1 ¶¶ 23-27. Tiffany was aware that as of July 19, 2019, "the Greenwoods had continued to refuse the Signature requirement," and on "July 22, 2019, [the] Greenwoods terminated the Purchase and Sale Agreement," providing as the reason for their cancellation that "Ford would not provide consent to the sale to Greenwoods unless the Greenwoods agreed to perform a 'Signature' upgrade to the facility." *Id*. ¶¶ 28-29.

Plaintiffs have also submitted excerpts from the deposition of Ford employee Meghan Murphy, who, in response to the question whether "Ford would not approve the Greenwoods' purchase agreement without the Greenwoods putting into their letter of understanding that they were going to make the facilities upgrade that were being required by Ford," responded, "yes, the term LOU is required to be signed in order to appoint the candidate. And that term LOU at this point in time did include the facility requirement." Dkt. No. 40-2 at ECF p. 64. In addition, plaintiffs have submitted an internal Ford email in which Ford employee Michael Gogolewski stated, "We pushed the candidates from the beginning for more than paint/carpet/signage. . . . [M]y VM last week suggested we place Greenwood's on a Term for Facility. This is my suggested outside the box idea . . . They don't have to build it within 2 years, but it will be clearly communicated Ford will not provide an [*sic*] Continuing Agreement until we have a complete signature design onsite." Dkt. No. 40-2 at ECF p. 127. In response to this email, Ford employee Scott Kalass stated, "I do not want to cripple this deal or put at risk the dealer viability. I also don't want to just accept a facility that clearly doesn't follow our branding. . . . Let's move forward with the term for facility." *Id*. at ECF p. 128.

Overall, the record amply establishes that a jury will need to resolve disputes of material facts. California Vehicle Code Section 11713.3(d)(3) underscores the need for a trial by stating that, in actions like this one, where the manufacturer's withholding of consent is an issue, "whether the withholding of consent was unreasonable is a question of fact requiring consideration of all existing circumstances."

Ford tries to make much of the fact that it issued one express rejection of the proposed transaction between the Tiffanys and the Greenwoods, and it is undisputed that that rejection is not at issue here. *See*, *e.g.*, Dkt. No. 39 (Ford's motion) at 9 ("Ford's rejection of the transaction in May 2019 for lack of information is not at issue here."); Dkt. No. 40 (plaintiffs' opposition) at 7 ("As noted by Ford in its Motion, Ford procedurally issued a letter of rejection in May 2019, in order to provide a written response within the 60 day statutory review period, however, as indicated by Ford, that turndown is not at issue because Ford continued to review the proposed transaction and received further information from Greenwoods thereafter."). This fact is not nearly as conclusive as Ford would have it. California Vehicle Code Section 11713.3 prohibits not just the unreasonable disapprovals of proposed sales but also the unreasonable withholding of consent. Moreover, in *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corporation, U.S.A.*, 221 Cal. App. 4th 867, 881 (2014), the California Court of Appeal found that "[s]ubstantial evidence supports the jury's factual findings that Yamaha unreasonably withheld its consent to Powerhouse's sale of the Franchise Agreement to MDK," where Yamaha had "refused to consider approval of the MDK sale."

Ford also says that the facility upgrade it required of the Greenwoods was discussed as part of a "Letter of Understanding" process that was independent of the approval of the proposed sale transaction. Dkt. No. 39-1 at 6-7. This too is hardly dispositive because it is Ford's version of the facts, the truth of which will need to be determined by a jury.

Ford's summary judgment arguments for all four of plaintiffs' claims all turned on this same alleged lack of factual dispute. *See*, *e.g.*, Dkt. No. 41 at 7 ("because Ford did not commit any independently wrongful acts, Plaintiffs' claims for tortious interference and under the

Business Professions Code fail as a matter of law."). The motion for summary judgment is consequently denied in its entirety.

**IT IS SO ORDERED.**

Dated: January 26, 2022

JAMES DONATO
United States District Judge